Weil v. Reiss.

.WEIL et al., Appellants, v. REISS et al.

### Division One, February 19, 1902.

1. **Fraudulent Conveyance:** IMPUTED KNOWLEDGE: ATTORNEY AND NO-
TARY PUBLIC. Where one of the partnership of attorneys is employed,
not as an agent to negotiate a trade for the grantee in a deed, but
only to examine the abstract of title, draw up the deed and take the
acknowledgment of the grantor, the knowledge that his law partner
may have had of the grantor's intention to convey his property for
the purpose of delaying and hindering his creditors, is not imputable
to the grantee. For in such case the grantee does not seek to retain
the fruits of a contract made by such attorney, but of one made by
himself.

2. ——: ——: STOPPING CHECK. Unless it has come to the knowl-
edge of the grantee that the purpose of a sale and conveyance to him
was the defrauding of the grantor's creditors, or unless the facts and
circumstances brought to light at the trial tending to prove that such
was the grantor's purpose had come to his knowledge, fraud can not
be imputed to him because he did not stop the payment of a check for
several days after he had received his deed and after he had heard the
grantor had made a trust deed for the benefit of certain creditors.

3. ——: ——: GARNISHMENT: CASHING CHECK. To be summoned
as a garnishee in an attachment against one who has disposed of his
property for the purpose of fraudulently delaying his creditors, does
not advise the garnishee, who has lately bought land from him and
paid for it, of any fact, tending to show fraud on his part; on the
contrary, its tendency is to show the opposite. Nor is such garnish-
ment such notice as requires him to stop the cashing of a check which
he has given in payment of the land.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,*
Judge.

AFFIRMED.

*Wallace & Wallace, Wollman, Solomon & Cooper, J. A.
Harzfeld* and *I. J. Ringolsky* for appellants.

(1) The record shows by direct testimony and by all the 'facts and circumstances that defendant Lorie was cognizant of defendant Reiss's financial condition and of his purpose and intent to dispose of his property in order to hinder, delay and defraud his creditors. This knowledge on the part of Lorie makes the deed fraudulent and void. Arnold v. Hartwig, 73 Mo. 175. (2) The knowledge of Lorie need not be proved by direct and positive testimony, but may be inferred from all the facts and circumstances in the case. Massey v. Young, 73 Mo. 260; Van Raalte v. Harrington, 101 Mo. 602. (3) If the facts and circumstances in the case were such as would have put an ordinarily prudent man upon inquiry as to the purpose of Reiss, and such inquiry would lead to the discovery of the fraudulent purpose of Reiss, the court can then infer that Lorie had knowledge of Reiss's purpose. Van Raalte v. Harrington, supra. (4) If the attorneys and agents of Lorie had knowledge of the purpose of Reiss in making the warranty deed, this knowledge must be considered to be the knowledge of Lorie, and he is bound thereby. Haas v. Sternbach, 156 Ill. 44; Wells v. McMahon, 3 Wash. Ter. 532; Taylor v. Evans, 29 S. W. 172; Wight v. Muxlow, 8 Bend. (U. S.) 52; Rogers v. Palmer, 102 U. S. 263; State v. O'Neill, 151 Mo. 89. (5) If either Lorie or his attorneys had knowledge of the purpose of Reiss before or at the time the deed was drawn, or at any time before the consideration passed or the check was cashed, then the deed is void. Arnold v. Hartwig, supra; Work v. Coverdale, 47 Kas. 307; Carter v. Richardson, 60 S. W. 397; Shoe Company v. Lisman, 149 Mo. 85. (6) A check is not equivalent to payment unless it is so agreed by the parties at the time, and the presumption is that it is not accepted as payment until cash is actually received upon the same. Bank v. Bank, 58 Mo. App. 17.

*Karnes, New, Hall & Krauthoff* for respondents.

(1)   The following propositions of law are incontrovertible:   (a) The statements or admissions of Reiss, the grantor in the deed assailed as fraudulent, made after the execution of the deed, are not competent evidence as against Lorie, the grantee therein.   Cleveland v. Davis, 3 Mo. 234.   "A grantor, by declarations subsequent to his conveyance, can not affect the rights of his grantee."   Gamble v. Johnson, 9 Mo. 616; Garland v. Harrison, 17 Mo. 290; Steward y. Thomas, 35 Mo. 202; Albert v. Besel, 88 Mo. 154; Fearey v. O'Neill, 149 Mo. 473; Cash v. Penix, 11 Mo. App. 597; Sparks v. Brown, 46 Mo. App. 535; Sammons v. O'Neill, 60 Mo. App. 542. (b)   A party introducing one as his witness vouches for his veracity and credibility.   Imhoff v. McArthur, 146 Mo. 377; Chandler v. Fleeman, 50 Mo. 240; Dunn v. Dunnaker, 87 Mo. 597; Claflin v. Dodson, 111 Mo. 201; Ettlinger v. Kahn, 134 Mo. 498; Fearey v. O'Neill, supra.   (c) While fraud may be inferred, when it is a legitimate deduction from all the facts and circumstances in evidence, it can never be presumed, and courts should not find it, except on clear proofs.   And if a transaction consists as' well with honest and fair dealings as with a fraudulent purpose, it will be referred to in the better motive.   Garesche v. MacDonald, 103 Mo. 10; Robinson v. Dryden, 118 Mo. 539.   (2)   The crucial point in this case is the "actual knowledge or notice on the part of Lorie of intended fraud perpetrated by Reiss," and as to this appellants admit that "the evidence is quite conflicting, consisting of positive assertions on one side and emphatic denials on the other," but it is contended that "from this mass of conflicting testimony" the appellate court "must draw its own conclusions and review the testimony *de novo*."   The trial court found that "Lorie was an innocent purchaser for value of the land in question."   Under well-settled rules of appellate procedure we might with propriety end our discussion at this point and

ask for an affirmance upon appellants' admission as to the state of the record.

BRACE, P. J.—By general warranty deed dated December 26, 1895, and on the same day duly acknowledged and filed for record at five o'clock and three minutes p. m., Morris Reiss and wife conveyed a tract of land containing three acres, described in the petition, to Joseph Lorie. By a deed of trust of the same date, on the same day duly acknowledged and filed for record at six o'clock and ten minutes p. m., the said Reiss conveyed all of his goods, wares and merchandise, consisting of a stock of liquors, together with the fixtures and furniture in his storeroom at 603 Delaware street, Kansas City, Missouri, to Sigmund Harzfeld in trust to secure the payment of certain debts therein described to several of his creditors therein named.

Afterwards, on the twenty-eighth of December, 1895, Samuel N. Weil & Company, The Corning Company and Kate J. Rosenham, creditors of the said Reiss who were not secured by said deed of trust, instituted suits by attachment against said Reiss, which on the same day were duly levied on said real estate, and thereafter, on the tenth of January, 1896, the said Samuel N. Weil & Co. instituted this suit against the said Morris Reiss, Joseph Lorie, The Corning Company and Kate J. Rosenham, to set aside and annul said warranty deed from Reiss and wife to Lorie, on the ground that the same was without consideration, and executed for the purpose of hindering, delaying and defrauding the creditors of the said Reiss. The answers of the defendants Reiss and Lorie were a general denial. The answers of The Corning Company and Mrs. Rosenham were each a cross-bill setting up, respectively, their claims, and for like cause a joinder in the prayer of the petition. On the hearing, the plaintiff's bill, and the cross-bills of the defendants, The Corning Company and Mrs. Rosenham, were dismissed and from the judg-

ment rendered accordingly, Samuel N. Weil & Company, The Corning Company and Kate J. Rosenham appeal. The trial court held that while the evidence was sufficient to sustain the charge of fraud as to Reiss it was insufficient as to Lorie, whom the court found to be an innocent purchaser for value. The only ground urged for reversal, is that the court erred in holding on the evidence that Lorie was an innocent purchaser.

(1) The evidence tended to prove that the tract of land in question was worth from $900 to $1,000. That sometime in the latter part of the fall of 1895, the attention of Lorie was called to this tract of land by a Mr. Lietenberg, who told him it belonged to Reiss, and asked him if he wanted to buy it. That in pursuance of this suggestion he called on Reiss the next day, ascertained his price, got a description of the property, and told Reiss he would look it up, and might buy it. Thereafter Lorie examined the tract, consulted with his real estate agent Mr. Phelps as to the value of it, and subsequently made Reiss an offer of $900 for the tract, if Reiss would furnish an abstract of the title, whereupon Reiss told him to order the abstract and he would pay for it. Lorie ordered the abstract, which was completed and delivered to him on the twentieth of December, 1895. He thereupon turned the same over to Edwin F. Weil, a young attorney and notary public, a relative of his, and who was living with him, for the purpose of having the same examined and a deed drawn. Weil examined the abstract, reported the title all right, and on the twenty-fourth of December drew the deed in question, made an appointment for the parties to meet at his office on the morning of the twenty-sixth of December, to close up the trade, and on that morning on his way from his home to his office called at the Washington Hotel where Mrs. Reiss boarded, obtained their signatures to the deed, took their acknowledgment, and with Mr. Reiss went to his office where they met Mr. Lorie, who gave Mr. Reiss a check on the Metropolitan

National Bank for $900, and Reiss delivered the deed to him. Lorie then handed the deed to Weil with the request that he file it for record, when he went to court. Thereupon the parties separated. This was about nine o'clock a. m. Weil filed the deed for record that day at the hour hereinbefore stated.

It appears from the evidence that this young man Weil was in partnership with another young lawyer by the name of Silverman, and that they were practicing law under the firm name of Silverman & Weil; that their office, on the fifth floor of the New York Life building, consisted of one room, with a single door from the public hall, divided into two compartments by a partition running across the room from the door, extending from the floor nearly to the ceiling. The entrance from the hall was into Weil's compartment, thence near the door into Silverman's.

The evidence further tended to prove that about noon on the twenty-sixth of December, Meyer Stern, a friend of Reiss, came to Silverman in his office, and requested him to draw the deed of trust in question, and suggested the name of Benjamin F. Joffee as trustee. That after he left, Silverman drew the deed of trust as directed. That about four o'clock p. m. Reiss and Stern came in, when Stern informed Silverman that Reiss objected to Joffee, and that they had agreed upon Mr. Harzfeld for trustee, thereupon the name of Joffee was erased, and the name of Harzfeld inserted as trustee in the deed, the instrument was then signed by Reiss, acknowledged by him before Andrew E. Gallagher, notary public, delivered to Mr. Silverman, by him submitted to the officers of the Bank of Commerce, the largest preferred creditor, for approval, and afterwards filed for record as hereinbefore stated. Lorie testifies that he knew nothing about Reiss's financial condition, and first heard of the deed of trust at his club on the night of that day. He was summoned as garnishee in the attachment suits on the twenty-eighth of December, and his

check to Reiss was not cashed by the bank until the thirtieth of December. At the time of these transactions Reiss was, and for some time prior thereto had been, insolvent.

The foregoing presents the main features of the case made by the evidence from one standpoint, which must now be considered in connection with the other evidence presenting a different phase of the case, from another standpoint.

Benjamin F. Joffee, before mentioned, was introduced by the plaintiff as a witness, who testified in substance that he was a liquor dealer, had known Reiss about seven years. That four or five days before the deed of trust was executed, at the instance of Meyer Stern, he had an interview with Reiss in regard to his affairs. That Reiss informed him of his financial condition, what he wanted to do, and that Silverman & Weil were his attorneys. That after five or six interviews on the subject, about five o'clock p. m. of the twenty-fifth of December, 1895, Reiss & Silverman came to his place of business, and remained until eight o'clock, during which time it was arranged that Silverman should draw the deed of trust and have it ready by ten o'clock the next morning at Silverman & Weil's office, where it was to be executed and turned over to him. That in pursuance of a telephone message next morning, he went to Silverman & Weil's office, arrived there about eleven o'clock, met Reiss and Lorie in the hall, went with them into Silverman's office. Silverman was there and had the deed of trust prepared. That Lorie read it, and whilst the instrument was being read Julian Haar came in, soliciting for the Cleveland Orphan Asylum. That in the conference between Reiss, Silverman, Lorie and witness, it was arranged, that another trustee should be named in the deed and that witness should go out and find cash purchasers for some of the goods. That in pursuance of this arrangement he did go out, and negotiated sales of liquors to Wolfson for $400, and to Baruch for $500. These sales were consummated and the goods paid for at Stern's office about two o'clock in the after-

noon, Reiss, Stern, Baruch, Wolfson and witness being then present and the goods delivered to the purchaser later, in the evening of that day. The fact of the sale and delivery of these goods and that Joffee figured in these sales is substantiated by other evidence. The fact that Reiss was insolvent, that Joffee and Stern were advised of his financial condition, and that on the twenty-sixth day of December, 1895, as previously arranged between them, they were engaged in disposing of his stock in trade in the manner stated, for the purpose of preferring some of his creditors, defeating others, and securing the proceeds of a part thereof for Reiss's own use, is well established by the evidence. But, except in the testimony of Joffee as to what transpired in Silverman's office about eleven o'clock on the morning of the twenty-sixth of December, when as he testified, Lorie, Reiss, Silverman and himself, were there present, and Eugene Haar came in, there is not a particle of evidence tending to prove that Lorie knew anything about Reiss's financial condition, or had anything to do with or knew anything about the scheme for the disposition of his property. Lorie testified that he was not there, and Reiss and Silverman testified that neither Joffee nor Lorie were there upon that occasion, and Eugene Haar testified that the occasion when he came into Silverman's office, and saw Lorie and Joffee there, was on the fourth of December, 1895. So that, by a great preponderance of the positive evidence Lorie was not there, and had nothing to do with the fraudulent scheme to which Joffee testified, and this conclusion is reinforced by the improbability of the story of Lorie's connection therewith. There is no reason why he should have been there, or should have taken any part in those proceedings. His business with Reiss had been concluded some two hours before, and thereafter he had no interest whatever in Reiss's affairs and in the facts of the case no motive can be found for his taking the part assigned to him in Joffee's testimony. The evidence in the case is voluminous, variant and conflicting.

We have given all of it mature consideration and rejecting the discredited evidence aforesaid of Joffee as to Lorie. We think the conclusion of the chancellor is well sustained by the preponderance of the evidence, upon which reliance can be placed.

(2) It is contended, however, that although Lorie may not have had any knowledge of Reiss's fraudulent purposes when his purchase of the real estate was consummated, yet that Silverman & Weil had such knowledge and their knowledge should be imputed to him. It is but fair to these young men to say that it does not appear from the evidence that Weil had such knowledge, and that the main support of the charge that Silverman had, is the evidence of the discredited witness Joffee. But whatever their knowledge, it is not imputable to Lorie. They were not his agents to negotiate the trade, and did not negotiate it. Lorie in this contest is not seeking to retain the fruits of a contract made by them, but of one made by himself in conducting which Weil was simply employed by him to examine the abstract, report upon the title shown by it, and draw the deed. The case does not fall within the principle of the cases cited by counsel in support of this contention.

(3) Finally it is contended that although Lorie had no knowledge of Reiss's purpose to defraud his creditors, when he gave his check for the purchase money, accepted the deed and placed it upon record on the twenty-sixth of December, yet as he afterwards on the night of that day learned that Reiss had made the deed of trust of that day, and was on the twenty-eighth of December summoned as a garnishee in the attachment proceedings by the unpreferred creditors, and his check was in fact not cashed by the bank until the morning of the thirtieth of December, and he made no effort to countermand the check, he ought to be held a participant of Reiss's fraud. If after Lorie had given his check to Reiss, and before he had reason to believe his check had been cashed by the bank it had come to his knowledge that the sale and convey-

ance to him had been made by Reiss for the purpose of defrauding his creditors, or if the facts and circumstances brought to light on the trial of this cause tending to prove that such was the purpose of Reiss, had so come to his knowledge, and he had taken no steps to countermand the check before it was cashed, then the case would have been brought within the principle of the authorities cited in support of this contention. But the facts stated do not so bring it. Lorie had no knowledge of the fact that his check had not been cashed before the thirtieth of December, and no reason to believe it had not been cashed in the ordinary course of business within a short time after it was given. The fact that Reiss had executed a deed of trust to some of his creditors, while it advised Lorie that Reiss was in failing circumstances, did not tend to show any fraud upon his part in the transaction Lorie had had with him, or with any one else for that matter, as it is perfectly legitimate for a debtor in failing circumstances to prefer one or more of his creditors in this manner if he sees proper to do so. The garnishment advised him of no fact tending to show fraud upon the part of Reiss in the transaction with him. On the contrary, its tendency was to show an affirmance thereof. So that when the check was cashed on the thirtieth of December, Lorie was just as ignorant of any fraudulent intent on the part of Reiss in making the sale and conveyance to him, as he was on the twenty-sixth of December when the check was given, and just as ignorant of the material facts disclosed by the evidence on the trial of this cause tending to show such fraudulent intent.

It follows from what has been said that the judgment of the circuit court ought to be affirmed, and it is accordingly so ordered. All concur.